**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GERARDO ROMERO-OCHOA,
*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney
General,
*Respondent*.

No. 08-74277

Agency No.
A075-660-365

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 15, 2013—Pasadena, California

Filed April 10, 2013

Before: Marsha S. Berzon and Paul J. Watford, Circuit
Judges, and Jed S. Rakoff, Senior District Judge.[*]

Opinion by Judge Watford

---

[*] The Honorable Jed S. Rakoff, Senior United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Gerardo Romero-Ochoa's petition for review of the Board of Immigration Appeals' decision finding him ineligible for cancellation of removal for failure to demonstrate good moral character, due to his conviction and period of incarceration for vehicular manslaughter.

The panel held that plausible reasons support 8 U.S.C. § 1101(f)(7)'s conclusive presumption that an individual lacks good moral character based on a period of incarceration, rather than on the nature of the criminal conduct, and that Congress rationally concluded that most aliens convicted of crimes warranting at least six months of incarceration lack the good moral character to warrant discretionary relief from removal. The panel also held that § 1101(f)(7)'s reliance on periods of incarceration generated by state sentencing regimes that are not uniform in operation did not violate equal protection principles.

### COUNSEL

Susan E. Hill (argued), Hill, Piibe & Villegas, Los Angeles, California, for Petitioner.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

John W. Blakeley (argued), Senior Litigation Counsel; Tony West, Assistant Attorney General; Leslie McKay, Assistant Director, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

## OPINION

WATFORD, Circuit Judge:

Gerardo Romero-Ochoa is a native and citizen of Mexico who first came to the United States in 1973, when he was roughly 18 years old. His wife is a lawful permanent resident of the United States, and three of his five children are U.S. citizens. Mr. Romero's mother is a lawful permanent resident of the United States and his younger brother is a U.S. citizen as well.

But Mr. Romero is not a lawful permanent resident; in the eyes of the immigration laws, he is an "alien present in the United States without being admitted or paroled," and is thus subject to removal. 8 U.S.C. § 1182(a)(6)(A)(i). In 2005, the government initiated removal proceedings against him, prompted by his then-recent 2004 conviction for vehicular manslaughter. Mr. Romero pleaded guilty to killing a person while unlawfully driving under the influence of alcohol in violation of California Penal Code § 192(c). He received a sentence of 16 months in prison and served approximately half of that time in custody.

Mr. Romero conceded removability and filed an application for cancellation of removal or, in the alternative, for voluntary departure. To be eligible for such relief, Mr. Romero had to show, among other things, that he is a person

of "good moral character" and was so during the 10-year period immediately preceding his application (or, in the case of voluntary departure, the 5-year period immediately preceding his application). 8 U.S.C. §§ 1229b(b)(1), 1229c(b)(1).

The immigration judge presiding over Mr. Romero's removal proceedings held that he is statutorily ineligible for relief because he cannot meet the good moral character requirement. Congress has not explicitly defined what it means to have "good moral character," but it has established eight categories of individuals who are conclusively presumed to *lack* good moral character. *See* 8 U.S.C. § 1101(f). Mr. Romero falls within one such category: individuals who have been "confined, as the result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more" during the period for which good moral character must be shown. *Id.* § 1101(f)(7). Because Mr. Romero was imprisoned for more than 180 days during the relevant time period (as a result of his vehicular manslaughter conviction), he is conclusively presumed to lack good moral character. The immigration judge denied Mr. Romero cancellation of removal and voluntary departure on that basis, and the Board of Immigration Appeals affirmed.

Mr. Romero does not dispute that 8 U.S.C. § 1101(f)(7) precludes him from establishing eligibility for cancellation of removal or voluntary departure. But he asks us to declare § 1101(f)(7) facially unconstitutional on the ground that it violates the equal protection component of the Fifth Amendment's Due Process Clause. (Mr. Romero also attacks § 1101(f)(7) under the rubric of "substantive due process," but he does not advance any independent arguments for

invalidation under that theory.) In Mr. Romero's view, the constitutional vice of § 1101(f)(7) is that it conclusively presumes an individual to lack good moral character based solely on the length of time served in prison, rather than on the nature of the underlying criminal conduct. Given the wide variation in sentences imposed by different States for the same criminal conduct, Mr. Romero argues, § 1101(f)(7) allows disparate treatment of similarly situated individuals in violation of equal protection principles.

Before explaining why we reject this challenge, it is helpful to isolate the narrow pivot of Mr. Romero's argument. He does not contest Congress's authority to order the removal of those present in this country unlawfully, nor Congress's judgment that leniency should be extended to certain classes of removable aliens but not others—for example, by offering discretionary forms of relief like cancellation of removal and voluntary departure only to those who can show good moral character. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (such policy judgments are reserved to the political branches alone). Nor does he contest Congress's authority to declare that those who have committed sufficiently serious crimes are conclusively presumed to lack good moral character. Mr. Romero's sole contention is that, in deciding which crimes are sufficiently serious to warrant that presumption, Congress may not use the length of time served in custody as a proxy for seriousness. Instead, Mr. Romero argues, Congress must use conduct-based classifications, as it has elsewhere in § 1101(f), by specifying the particular criminal offenses which trigger the conclusive presumption that an individual lacks good moral character. *See* 8 U.S.C. § 1101(f)(3), (8), (9).

Our task in evaluating the constitutionality of Congress's chosen method of designating offenses that render an alien ineligible for relief is a limited one. The sentence-based classification drawn by § 1101(f)(7) does not implicate a fundamental right or target a suspect class, so it is subject to rational basis review. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *Sudomir v. McMahon*, 767 F.2d 1456, 1464-65 (9th Cir. 1985). Such review does not provide "a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Commc'ns*, 508 U.S. at 313; *see Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316–17 (1976) (per curiam). Thus, the question for us is not whether basing ineligibility on conviction of a specified offense, as opposed to sentence length, provides a superior means of accomplishing Congress's end. *See Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2083 (2012); *Murgia*, 427 U.S. at 316. We ask only whether there are "plausible reasons for Congress' action," and if there are, "our inquiry is at an end." *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980).

We think there are plausible reasons supporting the classification drawn by § 1101(f)(7). Congress rationally concluded that, in most cases, aliens who have been convicted of crimes serious enough to warrant at least six months of incarceration will lack the good moral character necessary to warrant discretionary relief from removal. Congress was entitled to rely on that judgment to create the conclusive presumption erected by § 1101(f)(7) even though it may prove over- or under-inclusive in individual cases. *See Fiallo*, 430 U.S. at 799; *Mathews v. Diaz*, 426 U.S. 67, 83 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 776–77, 781 (1975). Although the conclusive presumption denies individuals like Mr. Romero an opportunity to show that they possess the requisite good moral character notwithstanding

their service of more than six months in custody, Congress could rationally conclude that "the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule." *Salfi*, 422 U.S. at 777. Whether Congress should have drawn the line at six months in custody, or one year or ten years, is not for us to second-guess. *See Fritz*, 449 U.S. at 179; *Mathews*, 426 U.S. at 83–84.

All that remains is Mr. Romero's contention that § 1101(f)(7) violates equal protection principles because it relies on the periods of incarceration generated by state sentencing regimes that are not uniform in operation. We do not think this aspect of § 1101(f)(7) renders it irrational. There may well be cases in which the same underlying crime results in a period of incarceration of seven months in one State but only five months in another. But that sort of disparity at the margins does not render the classification invalid under rational basis review. *See Murgia*, 427 U.S. at 316. Drawing any line "inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line." *Mathews*, 426 U.S. at 83. And we have held that when determining which offenders should be eligible for immigration relief, Congress may rationally rely on "the adjudicating forum's judgment concerning the seriousness of [an] offense." *Rangel-Zuazo v. Holder*, 678 F.3d 967, 969 (9th Cir. 2012) (per curiam). That remains true even though different forums impose different sentences for the same offense. *See Vieira Garcìa v. INS*, 239 F.3d 409, 414–15 (1st Cir. 2001).

**PETITION FOR REVIEW DENIED.**